**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT S. VARNER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-2138** |
| **v** | : | **(JUDGE MANNION)** |
| **MHS, LTD. d/b/a Wear-Flex Slings** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

Pending before the court in this products liability action is the motion for summary judgment, (Doc. 20), of defendant MHS, Ltd. on plaintiff's claims for strict liability, negligence, and breach of warranty.[1] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.


**I.    BACKGROUND**

This is a products liability action arising from an incident in which plaintiff Robert Varner was injured at work. Plaintiff was employed as a welder by G.E. Railcar on May 3, 2011. (Doc. 2, ¶ 3, Doc. 21-4, at 11). Plaintiff's job duties included removing valves and related machinery from railcars and replacing them with new equipment. (Doc. 21-4, at 13). This sometimes

_____

[1]The court had previously granted summary judgment for defendant and closed this case after plaintiff failed to timely respond to defendant's motion for summary judgment. (Doc. 29). On reconsideration, after plaintiff moved to reopen the case and allow an extension of time to respond to the summary judgment motion, the court reopened the case and defendant's motion for summary judgment. (Doc. 35).

required lifting heavy plates and attached equipment from the cars using a crane operated by plaintiff via remote control. (Id. at 13-16). On May 3, 2011, the day he was injured, plaintiff was using a nylon strap ("strap" or "sling") manufactured by defendant. Plaintiff, standing on top of the railcar, connected the crane to the valves and related equipment with the nylon strap, and used it to lift the equipment out of the railcar. (Id. at 33-41). His coworker Kyle Frisbie was working with plaintiff at the time. (Id. at 31). Plaintiff estimated the total weight of the plate and equipment he was lifting from the car was 350-400 pounds. (Id. at 42). Mr. Frisbie estimated the weight of the equipment to be less, in the range of 200-250 pounds. (Doc. 37-1, at 19).

Plaintiff testified that he inspected the nylon strap prior to using it to attach the equipment to the crane, and was fully satisfied that it was fit for use. (Doc. 21-4, at 34-35). Mr. Frisbie also testified that he initially inspected the strap before giving it to plaintiff, and found it to be fit for use. (Doc. 37-1, at 28-29). Both workers testified that it was each worker's responsibility to inspect the straps, that they receive on-the-job training instructing them to inspect the straps for signs of wear or stress, and that a strap deemed unfit for use because of tearing, fraying, weld splatter, or other sign of stress is immediately discarded. (Docs. 21-4, at 34; 37-1, at 11-12, 28). They use the straps on a daily basis in performing their work. (Doc. 21-4, at 92).

As the plate and other equipment were being lifted out of the car, plaintiff realized that a pipe, which was welded to the bottom of the plate

2

being lifted, had an "offset" at its bottom, instead of extending straight down into the railcar. (Doc. 21-4, at 38). Plaintiff began to move the crane, via remote control, to the north to allow for room to get the offset portion of the pipe out of the railcar. (Id. at 38-41). When the pipe was almost completely out of the car, plaintiff testified to hearing a "snap," moving his head, and the plate coming down off of the crane and falling onto his arm. (Id. at 39-40). Plaintiff testified that earlier in the process, there had been resistance in getting the equipment out of the tank, possibly due to rust, so that he stopped using the crane and strap to hoist the material, lowered the equipment back onto the car, and used a chisel to free the equipment before again attempting to lift it out. (Id. at 41-42). Mr. Frisbie, however, testified that no chisel was used at any time throughout the procedure. (Doc. 37-1, at 51-52).

Plaintiff stated that he did not pull on the equipment or on the strap at any point during the removal procedure. (Id. at 41). Mr. Frisbie additionally testified that plaintiff was not tugging or lifting on the plate at all, or making any manual contact with the equipment whatsoever. (Id. at 35-36). He also testified that plaintiff followed proper safety procedures while using the strap and that plaintiff was not standing in the "wrong spot" at the time of the accident. (Id. at 35, 41). Plaintiff and Mr. Frisbie also testified that the strap did not come into contact with any sharp edges at any time. (Id. at 53; Doc. 21-4, at 57). Mr. Frisbie testified that there was nothing out of the ordinary about the workday until plaintiff was injured. (Doc. 37-1, at 38).

3

Plaintiff testified that the plate came down, hit his arm, and came to rest at an angle over his arm. (Doc. 24-1, at 45). Mr. Frisbie pulled plaintiff away. Because the plate was at an angle, plaintiff's arm was not stuck or crushed beneath it and Mr. Frisbie did not need to move the plate to free plaintiff. (Id.). Plaintiff was bleeding slightly from the site where he was hit, and testified to not feeling much, but being in shock. (Id. at 48). Plaintiff had two surgeries, the first to repair tendon issues in his thumb, and the second to implant screws in his wrist. (Id. at 72-77). The second surgery was to address numbness and pain plaintiff continued to experience in his left wrist and hand. (Id. at 77). Following the second surgery, plaintiff continued to experience pain, but was starting to regain range of motion. (Id.). He attended physical therapy twice a week. (Id. at 78). Plaintiff was cleared for light duty work, but has not been told he can return to his previous duties. (Id. at 23). He submitted paperwork to the company, but they did not have light duty work for him. (Id.). He has not worked since the accident. (Id. at 18).

Steven Schroeder, President and CEO of defendant nylon strap manufacturer, testified that the instant case is the third lawsuit he can remember being filed against the company. (Doc. 22-2, at 27). He stated that of the previous lawsuits, one concerned the improper use of a strap which had been discarded, and one was found not to involve a strap made by defendant. No liability was found in either case. (Id. at 28). He also testified that the company retains a file of customer complaints about their straps. (Id. at 28-

29). He did not remember the last time the company had received a complaint, so he was not sure if the complaint file even contained any complaints. (Id. at 29-30).

Mr. Schroeder identified the strap as having been manufactured in December of 2007. (Id. at 12). He also testified to the safety testing procedures his products go through. Straps are periodically tested by being pulled until they are destroyed. (Id. at 18). Straps must meet a "five to one" design factor, meaning that a strap must be able to hold five times more than its listed capacity before being destroyed. (Id. at 19). Straps are tested on a weekly basis, and some component parts are tested daily. (Id.). He testified that when straps are tested to destruction, their fibers break and they make a popping noise. The broken ends of the fibers "blossom out." (Id. at 20). He testified that there are no expiration dates on the slings, nor any limit to how many times they can be used. (Id. at 24). He saw pictures of the incident strap, and indicated that he thought the strap had been cut. (Id. at 31). However, on reinspecting the photos during his deposition, he was no longer sure whether there was evidence that the sling had been cut. (Id. at 34).

Mr. Schroeder also testified to the safety warnings that accompany his products. The straps have an identification tag and a warning tag sewn into them. (Id. at 13). The leather identification tag is sewn into the strap on all four of the tag's sides. (Doc. 22-2, at 18). It lists the different "lifts," or configurations in which one can use the strap to lift or support something.

5

(Id.). There is also a warning tag, with one of its sides attached to the strap, which contains more safety information, including how to inspect the sling, when to remove it from service, and how to use it. (Id. at 19). There is also a warning pamphlet included in the package with the strap. In this case, plaintiff testified that he never read or saw such a pamphlet. (Doc. 21-4, at 18).

Defendant produced the report of Donald Pellow, P.E., who opined that the sling failed because one of its plies had been cut through entirely and another partially. (Doc. 21-2, at 5). He concluded that the sling had been cut pulling against a sharp edge without having been properly protected. He concluded that it was likely that the sling was overloaded beyond its rated capacity when plaintiff was first attempting to lift the stuck equipment, which would have exacerbated the weakness caused by the sling being cut. (Id.). Mr. Pellow stated that plaintiff had not been properly trained in rigging nylon straps, and that he violated federal regulations and safety standards by failing to prevent cutting of the strap and overloading the strap. (Id.). He opined that the warning tag attached to the strap instructs and warns users on correct usage of the slings, as do several industry handbooks and catalogs. (Id. at 5-6). He opined that the strap contained no design or manufacturing defect, but that misuse caused the strap to break. (Id. at 6).

Plaintiff's expert, Eric Heiberg, P.E., stated that the warning tag had been removed from the strap involved in plaintiff's accident. (Doc. 31-1, at 5). He believed that this was because the warning label was only affixed to the

strap on one of its sides and was therefore easy to remove intentionally or unintentionally. (Id.). He opined that defendant could and should have used a leather warning label, like the one it uses to inform users of the strap's lift capacities and the different types of lifts, to convey the warning information. (Id.). He stated that other sling manufacturers provide warning labels that are not easily removed. (Id.). He opined that the lack of an adequate warning label was a defect. (Id.). He stated that due to the defect, plaintiff was not properly warned of the danger of trying to lift a stuck or obstructed object using the sling. (Id. at 4). He believed it likely that plaintiff trying to lift the obstructed weight weakened the strap, which broke shortly thereafter. (Id.).

Mr. Heiberg disagreed with several of Mr. Pellow's conclusions. He maintained that Pellow had no basis for saying the strap had been cut. (Id. at 7-8). He further maintained that Pellow's opinion that the warnings were adequate does not apply in this case, where the warning tag was no longer attached to the strap. (Id.). He also believed Pellow disregarded the testimony of plaintiff that he inspected the sling and found nothing wrong with it, and that the sling did not come into contact with anything sharp. (Id.).

Mr. Pellow submitted a supplemental report in response to Mr. Heiberg. He stated that, as Mr. Heiberg noted, it is impossible to say when or by whom the strap was cut. (Doc. 38-1 at 6). He maintained, however, that the physical evidence of the strap itself shows that there was a partial cut in the load-bearing sling. (Id.). He also states that the attachment of the warning tag is

7

proper and up to industry standards, and maintains that the retention of such tags is the responsibility of the end user. (Id. at 5). Finally, he contends that plaintiff did not receive proper training in the use of nylon straps, has not read any information on them, has not been trained as to federal and industry regulations, and that he put an unknown strain on the strap by attempting to remove the stuck equipment from the rail car.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see*

*also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La

Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

Plaintiff brings claims for strict liability, negligence, and breach of warranty. (Doc. 2). Defendant argues that summary judgment is warranted because the nylon sling is not an unreasonably dangerous product, that defendant gave adequate warnings, and that plaintiff's misuse caused the accident. Plaintiff argues that the "malfunction" theory of products liability applies in this case. Plaintiff also argues that defendant failed to warn of possible dangers.

A.   Products Liability Under the Restatement (Third) of Torts

"Federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts." Covell v. Bell Sports, Inc., 651 F.3d 357 (3d Cir. 2011)(*citing* Berrier v. Simplicity Manufacturing, Inc., 563 F.3d 38 (3d Cir. 2009)).[2] "One engaged in

---

[2]Pennsylvania products liability law is in a "continuing state of disrepair." Beard v. Johnson and Johnson, Inc., 41 A.3d 823, 836 (Pa. 2012). "The current state of the law in this area provides little clarity to consumers or manufacturers, or their counsel, as to their obligations and rights under the products liability law of this Commonwealth." Lynn ex rel. Lynn v. Yamaha Golf-Car Co., 894 F.Supp. 2d 606, 624-27 (W.D. Pa. 2012). The Pennsylvania Supreme Court has not yet ruled on whether the Restatement (Third) of Torts, rather than the analysis under the Restatement (Second) of Torts, now provides the controlling analysis for products liability claims. Although the court did not decide the issue in Beard, the court also did not disavow

the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."  Restatement (Third) of Torts §1 (1998).

> "A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe."

Restatement (Third) of Torts §2 (1998).

Plaintiff also brings claims for negligence in manufacturing, design, and failure to warn. "Subsections (b) and (c), which impose liability for products that are defectively designed or sold without adequate warnings or

_____

Covell.The Pennsylvania Supreme Court has allowed appeal in Tincher v. Omega Flex, Inc., 64 A.3d 626 (Pa. 2013), to decide the question, but has not yet made a decision. *See* Lance v. Wyeth, 2014 WL 260309, at n. 23 (Pa. Jan. 21, 2014). Until the Pennsylvania Supreme Court rules to the contrary, this court must apply the Third Circuit's rule from Covell and rely upon the Restatement (Third). *See* Kordek v. Becton, Dickinson and Co., 921 F.Supp. 2d 422 (E.D. Pa. 2013).

instructions and are thus not reasonably safe, achieve the same general objectives as does liability predicated on negligence." Restatement (Third) of Torts, §2, cmt. a. Under the Restatement (Third), "the concepts of strict liability and negligence are forged into one cause of action." Spowal v. ITW Food Equipment Group LLC, 943 F.Supp. 2d 550, 558-59 (W.D. Pa. 2013). Thus, though plaintiff purports to bring both strict liability and negligence actions, this distinction is abandoned by the Restatement (Third). Covell, 651 F.3d at 361. The court will address the manufacturing defect, design defect, and failure to warn claims under the analysis dictated by the Restatement (Third).

### 1.   Manufacturing Defect

Plaintiff alleges manufacturing defect, design defect, and defect on account of inadequate warnings. As to the manufacturing defect, plaintiff proceeds under the malfunction theory of liability, which allows plaintiffs to use circumstantial evidence, rather than direct evidence, to show that a product was defective.[3] Under the Restatement (Third), a plaintiff can support an

---

[3]Plaintiff's brief seems to apply the malfunction theory to the claim for design defect as well as manufacturing defect. However, use of malfunction theory in a design defect case is discouraged, as plaintiff can examine similar articles to the one that injured him to determine whether a design defect exists. Ellis v. Beemiller, Inc., 910 F.Supp. 2d 768, 779, n. 11 (W.D. Pa. 2012)(*citing* Dansak v. Cameron Coca-Cola Bottling Co., Inc. 703 A.2d 489, 496, n. 8 (Pa. Super. 1997).

inference of defect if the incident that harmed the plaintiff (1) was of a kind that ordinarily occurs as a result of a product defect; and (2) was not solely the result of causes other than product defect existing at the time of sale or distribution. Ellis, 910 F.Supp. 2d, at 783, n. 18 (*citing* Restatement (Third) of Torts §3). In applying the malfunction theory, courts consider several factors, including (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect. Ellis, 910 F.Supp. 2d, at 779; Del Baggio v. Maytag Corp., 660 F.Supp. 2d 626, 632 (W.D. Pa. 2009).

Here, it is clear that the strap malfunctioned. It broke while being utilized for its intended purpose of lifting objects, and it was not supposed to break. As to the timing of the malfunction, "prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether (a defect in design or) manufacture proximately caused the harm." Barnish v. BWI Bldg. Co., 980 A.2d 535, 543, n.6 (Pa. 2009)(*citing* Kuisis v. Baldwin-Lima-Hamilton Corp., 319 A.2d 914, 923 (Pa. 1974)(citations omitted)). The age of a product should be considered in light of its expected life and the stress to which it has been subjected. Kuisis, 319 A.2d at 923. "In most cases, the weighing of these factors should be left to the

finder of fact." Id. To survive summary judgment, a plaintiff who admits that the product functioned properly in the past must present some evidence explaining how the product could be defective when it left the manufacturer's control and yet still function properly for a period of time.

Here, testimony revealed that the strap was manufactured in December 2007, and the injury occurred in May 2011, making it clear that the strap was around three and a half years old at the time of the accident. Mr. Frisbie believed that the strap had been used in the day or days before the accident, but had no specific notion of how long or how often it had been used. (Doc. 37-1, at 27). The strap's manufacturer stated that the straps have no age limit or number of times they can be used safely. Thus, there are questions of fact as to whether the strap had functioned properly in the past, whether it had suffered ordinary wear and tear over time, and whether it had functioned properly for a substantial period of time before the incident.

As to whether there are similar accidents involving the same product, the evidence in the record reflects that there had never been a mishap with defendant's slings at the facility where plaintiff worked, that there had been very few lawsuits against defendant manufacturer, none of which resulted in liability, and that the company keeps a file of complaints they receive about the products. Defendant testified that he could not remember the last complaint the company had, although his testimony implied that there had been one or more complaints at some point. There is no other evidence about

14

the number, nature, or recency of any such complaints.

As to other possible causes of the accident, a plaintiff proceeding under the malfunction theory does not need to negate every theoretically conceivable secondary cause for the malfunction. Del Baggio, 660 F.Supp. 2d, at 634 (*citing* Barnish, 916 A.2d, at 646). However, a plaintiff cannot establish a prima facie case "if the plaintiff fails to negate evidence of other reasonable, secondary causes that could account for the accident or evidence of abnormal use that the plaintiff introduces in its own case in chief." Id. When it is the defendant who hypothesizes or presents evidence of reasonable secondary causes, summary judgment is not warranted. Id.

Here, defendant has posited that either the strap was cut prior to or during its use, or that plaintiff overloaded the strap by lifting more weight than the strap was rated for, or that these two scenarios worked in concert, resulting in the sling breaking. Plaintiff has presented testimony that could suggest that there was some strain and resistance on the strap during the procedure, and plaintiff's expert also indicates that overloading was a likely cause of the accident, although he believes that overloading only occurred because of a lack of proper warnings.[4] Plaintiff also submitted testimony that

---

[4]Plaintiff's brief in opposition to summary judgment argues that there was no overloading of the strap. (Doc. 37, at 9). Plaintiff's expert's account differs from the brief on this issue, although seemingly by opining that the lack of proper warnings regarding overloading the strap constitutes a design defect. (Doc. 31-1, at 4, 6).

indicates that the strap was not cut before being used, that no improper procedure took place during the lift, and that the strap did not come into contact with any sharp or abrasive surface on the day of the accident. Thus, the only reasonable secondary cause suggested by plaintiff's own evidence is that the strap could have been overloaded when the equipment became stuck in the railcar.

The evidence of overloading is insufficient to warrant granting summary judgment. The expert reports do not bring clarity to the issue. Defendant's expert posits that the sling "may likely" have been overloaded and that a "higher, unknown" force was put on the sling when the equipment was stuck. (Docs. 21-2, at 5, 38-1, at 3). Plaintiff's expert notes that if equipment is stuck, the load the strap is subjected to is "not known." (Doc. 31-1, at 4). Without weighing the credibility of these statements, the court notes that they are of limited value in determining whether an alternate cause for the malfunction exists. They are vague, do not provide estimates of the weight the strap was subjected to, and do not provide evidence that the strap was or was not subjected to more weight than that for which it was rated. Moreover, the plaintiff's testimony that there was no tugging or pulling on the strap and that the equipment was lowered back into the railcar as soon as resistance was encountered serve to negate evidence of overloading.

As noted above, defendant also hypothesizes that the strap was cut before or during the lift. This possible cause is unsupported by plaintiff's own

evidence, and therefore is not sufficient to support summary judgment. Del Baggio, 660 F.Supp. 2d, at 634. Even if the court considers this theory, plaintiff's testimony, Mr. Frisbie's testimony, and the plaintiff's expert report analyzing the physical evidence all negate defendant's expert's contention that the strap was cut. Accordingly, the court cannot grant summary judgment on the alternate theory that the strap was cut prior to or during its use.

Plaintiff has thus made a showing of a manufacturing defect under the malfunction theory. It is clear that the strap malfunctioned, and plaintiff has produced evidence that negates alternate theories for the accident. There are genuine questions of material fact remaining as to timing and whether the strap was overloaded. Summary judgment is **DENIED** as to the manufacturing defect claim.

2.  Design Defect

Plaintiff also alleges that the sling was defectively designed. "A product is deemed defective in design when the foreseeable risks could have been reduced or avoided by the use of a reasonable alternative design, and when the failure to utilize such a design has caused the product to be not 'reasonably safe.'" Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 55 (3d Cir. 2009)(*citing* Philips v. Cricket Lighters, 841 A.2d 1000, 1019 (Pa. 2003)). "A plaintiff cannot prevail in imposing strict liability ... if the proposed design merely makes an already safe product slightly safer." Sansom v. Crown

17

Equip. Corp., 2012 WL 3027989, at \*7 (W.D.Pa. July 24, 2012).

The Restatement (Third) endorses a "reasonableness-based, risk-utility balancing test as the standard for adjudging the defectiveness of product designs." Phillips, 841 A.2d, at 1019. "[T]he test is whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller... rendered the product not reasonably safe." Vaskas v. Kenworth Truck Co., 2013 WL 101612, at \*8 (M.D. Pa. Jan. 8, 2013)(amended on reconsideration)(*citing* Restatement (Third) of Torts §2(b), cmt. d.). A court may consider a broad range of factors in determining whether an alternative design is reasonable and whether its omission renders a product not reasonably safe. Restatement (Third) of Torts §2, cmt. f. Factors relevant to this determination include "the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the nature and strength of consumer expectations regarding the product." Id. "The relative advantages and disadvantages of the product as designed and as it alternatively could have been designed may also be considered." Id.

Here, there is a foreseeable risk of harm that a user of the sling could be injured if the sling broke while bearing a load. The item is intended to lift heavy objects, and it is an obvious risk of such a device that if it breaks, heavy objects will fall, causing dangers. The training testified to by plaintiff and Mr.

18

Frisbie, the testing measures testified to by Mr. Schroeder, and the warnings attached to the straps all implicitly point to the fact that the use of the slings can be dangerous.

Moreover, plaintiff's expert puts forth a reasonable alternate design for the strap. He posits that the strap is unreasonably dangerous because the warning tag is sewn to the strap on only one of its sides, it is easily removed purposefully or accidentally, and that the design of the warning tag is thereby likely to deprive users of important safety information. He proposed that a warning tag should be sewn into the sling on all four sides of its perimeter. He indicates that another manufacturer in the industry uses this practice to attach its warning tags to its slings. He also indicates that defendant is capable of using this procedure, because the leather tag which gives information about lifts and weight ratings is sewn into defendant's strap all along its perimeter. Plaintiff has thus produced evidence of a reasonable and seemingly cost-effective alternate design.

Plaintiff's design defect claim falters, however, in showing that the omission of the more durable warning tag renders the product "not reasonably safe." There is no evidence in the record that the slings are not reasonably safe with their current design. While Mr. Heiberg's report indicates that the straps would be safer with differently attached warning tags, he does not show that the straps are not reasonably safe without those tags. Without that evidence, plaintiff's argument is basically that a different warning tag would

make a safe product safer, and that is insufficient to prevent summary judgment. Summary judgment is **GRANTED** as to plaintiff's strict liability design defect claim.

3.    Failure to Warn

"Under §2(c) of the Restatement (Third) of Torts, a product is defective because of inadequate instructions or warnings when 'the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor ... and the omission of the instructions or warnings renders the product not reasonably safe.'" Vaskas, 2013 WL 101612 at *10. The test for determining the reasonableness of warnings thus parallels that for determining the reasonableness of a product's design. Id.

Plaintiff contends that there is no evidence that warnings other than the leather tag with lift and weight rating information were provided with the strap involved in the incident in this case. However, there is testimony that each strap manufactured by defendant has both warning and informational tags attached, and is packaged with a warning pamphlet. Plaintiff has failed to produce anything to refute that testimony, and has not shown that the incident strap was shipped without the pamphlet. And, although plaintiff has shown that the warning tag was not attached to the strap at the time it was inspected by plaintiff's expert, plaintiff has not shown that defendant did not provide

20

such a warning with its strap when it was shipped. In fact, plaintiff's argument is not that no warning tag was provided, but that it was not durable enough to remain on the strap.

Plaintiff's expert does opine that warnings are most effective when they are durable, and he posits that this accident would not have happened had the warning been attached to the strap at the time of the accident. However, plaintiff has not been able to show that the strap is not reasonably safe because the warning tags on the straps are not sewn in all the way around their perimeters. Without a showing that the product is not reasonably safe, plaintiff's failure to warn claim cannot survive defendant's summary judgment motion. Summary judgement is **GRANTED** as to plaintiff's failure to warn claim.

B.   Breach of Warranty

Plaintiff's complaint contains claims for breach of the warranties of merchantability and fitness for a particular purpose, although none of the briefing in support of, or opposition to, the instant summary judgment motion addresses the substance of the warranty claims.

The implied warranty of merchantability warrants that goods "are fit for the ordinary purposes for which such goods are used." 13 Pa. C.S. §2314(b)(3).To establish the existence of an implied warranty of fitness for a particular purpose, the plaintiff must demonstrate that "(1) the seller had

21

reason to know of the particular purpose for which the buyer is purchasing the product and (2) the seller knows that the buyer is relying on its skill and judgment to furnish the proper good." 13 Pa. C.S. §2315. To establish a breach of either warranty, plaintiffs must show that the equipment they purchased from defendant was defective. Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1104-05 (3d Cir. 1992). "One way to demonstrate a defect is by the submission of circumstantial evidence." Id. (*citing* Greco v. Bucciconi Engineering Co., 407 F.2d 87. 89-90 (3d Cir. 1969)). Breach of implied warranty claims are permissible if based on a claim for manufacturing defect, but not for theories of design defect or failure to warn. Tatum v. Takeda Pharmaceuticals North America, Inc., 2012 WL 5182895, at * 3 (Oct. 19, 2012 E.D. Pa).

Although the parties did not brief the warranties issue, the court notes that, to the extent these claims are based on claims for design defect or failure to warn claims, they are impermissible. However, consistent with the above findings regarding the claim for manufacturing defect, plaintiff has presented, at this stage of the proceedings, sufficient circumstantial evidence to support that there was a defect in the strap and to negate that abnormal use or secondary causes were responsible for the accident. Thus, the court cannot say as a matter of law that no jury could find that defendant breached the warranty of merchantability. Defendant's motion is **DENIED** as to the claim for breach of the warranty of merchantability.

As to the claim for breach of the implied warranty of fitness for a particular purpose, plaintiff's complaint fails to allege that the seller had reason to know of the buyer's particular purpose, or that the seller had reason to know that the buyer was relying on seller's expertise. The record, as well as the complaint, are insufficient on the claim for breach of the warranty of fitness for a particular purpose. Thus, defendant's motion for summary judgment is **GRANTED** as to plaintiff's claim for breach of the warranty of fitness for a particular purpose.

## IV.   CONCLUSION

In light of the foregoing, defendant's motion for summary judgment, (Doc. 20), is **GRANTED IN PART** and **DENIED IN PART.** Summary judgment is **GRANTED** to defendant on plaintiff's claim for design defect, failure to warn, and breach of the warranty of fitness for a particular purpose. Summary judgment is **DENIED** on plaintiff's claims for manufacturing defect and breach of the warranty of merchantability. A separate order shall issue.


*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 6, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-2138-02.wpd